## UNITED STATES ex rel. CATECHES v. DAY, Commissioner of Immigration.

### No. 26.

Circuit Court of Appeals, Second Circuit.

Nov. 3, 1930.

Rehearing Denied Nov. 19, 1930.

Harold Van Riper, of New York City, for appellant.

Robert E. Manley, Acting U. S. Atty., of New York City (Ernest Lappano, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

**L. HAND, Circuit Judge.**

The relator was a Greek seaman who came to this country in 1915 and was lawfully admitted. Here he lived following the sea for a short time, and then, serving in, or conducting, a restaurant. Having left a wife and children in Greece, he went back to visit them in 1922 or 1923, and there he stayed until 1926. He then applied to an American consul in Greece for a visa for himself and his family, which was refused. In 1926 he signed on in Antwerp as a member of the crew of a British ship bound for this country, arrived at Norfolk and deserted while she was in port. So far as we can infer from the record, he was passed by the immigration inspector and allowed to land; certainly there is no evidence that he came in surreptitiously. The abstract from the official record of his entry seems to show that an inspector passed him as to his health, and his own testimony upon the proceedings is that he was inspected and told the inspector that the United States was his home. The only reasonable conclusion is that he was given leave to land, and that it was after he reached the shore that he deserted the ship. He remained here until 1929, when he was arrested under a warrant charging him with having overstayed the time allotted by the rules, and was heard by an inspector who reported against him. The Secretary confirmed the findings and ordered his deportation, and upon that order he sued out his writ. His position is that he was entitled to a hearing before a board of special inquiry under section 34 of the Immigration Act of 1917 (8 USCA § 166), where he could have proved that he was a "non-quota" immigrant, under section 4(b),

of the Immigration Act of 1924 (8 USCA § 204(b).

Section 25 of that act (8 USCA § 223); provides that its provisions shall be "in addition to and not in substitution for the provisions of the immigration laws," except in so far as these may be "inapplicable." Thus we must construe section 34 of the Act of 1917 as still in force so far as it does not clash with any provisions of the Act of 1924. No such question would indeed arise in the case at bar, if we were free to hold, as did the Sixth circuit, in Zurbrick v. Traicoff, 38 F.(2d) 811, that section 34 did not apply to lawful "landings" at all; but in U. S. ex rel. Danikas v. Day, 20 F.(2d) 733, we held that it did, to this extent following Nagle v. Hansen, 17 F.(2d) 557 (C. C. A. 9). Indeed in Hurst v. Nagle, 30 F.(2d) 346, the Ninth circuit went even further, and held that it did not cover unlawful landings, but only those where the seaman, having got shore leave, later deserted.

In U. S. ex rel. Rios v. Day (C. C. A.) 24 F.(2d) 654, the question first arose before us as to the effect of the act of 1924 upon section 34, in a case where the seaman had "landed" lawfully and then overstayed his leave. Being concluded by U. S. ex rel. Danikas v. Day, from saying that section 34 did not cover such a situation, we had to decide whether that section had become "inapplicable" under section 25 of the Act of 1924. We held that it had, and followed that ruling in three later cases, U. S. ex rel. Piccolella v. Day, 36 F.(2d) 1022; U. S. ex rel. Philippides v. Day, 37 F.(2d) 1015, and U. S. ex rel. Catches v. Day, 41 F.(2d) 1019, the last two of which are now in the Supreme Court (51 S. Ct. ——, 37, 75 L. Ed. ——, ——). In the first of these it appeared affirmatively that the seaman had "landed" lawfully, and the same probably was true in the others, though the record is not so clear.

As there has been no repeal by the Act of 1924, section 34, Act of 1917, may remain "applicable" to some of the cases which it covers, and not to the rest, and we must now determine where the case at bar lies. As to seamen covered by section 3(5), of the Act of 1924 (8 USCA § 203(5), there seems to be no doubt. Section 15 (8 USCA § 215) specifically mentions these among those who are not immigrants, and the length of whose stay the Secretary may fix. Section 14 (8 USCA § 214) certainly covers these in the clause, "any alien who * * * is found * * * to have remained" in the United States "for a longer time than permitted un-

der this subchapter or regulations made thereunder." The same is true as to those included under section 19 (8 USCA § 166). It cannot be that as to either of these classes there are two proceedings and two statutes of limitations, both "applicable"; the later must alone control.

It does not appear whether the relator was allowed to land as a seaman seeking to reship under section 3(5) of the Act of 1924, or to enter as a non-quota immigrant under section 4(b); but obviously it was as one of the two. If he was allowed to land under section 3(5), he could not invoke section 34 of the Act of 1917; if Zurbrick v. Traicoff be law, the section never covered him; if U. S. ex rel. Danikas v. Day be law, the Act of 1924 had made section 34 "inapplicable" to such cases. U. S. ex rel. Rios v. Day. If, on the other hand, he was admitted for entry under section 4(b), he certainly did not "land contrary to the provisions" of the Act of 1917 or of any other act. True, he might still not have been "entitled to enter"; the inspector might have been wrong in supposing that he was a non-quota immigrant. However, it seems to us clearly impossible to say if the officials did admit him after inspection, that he had "landed" unlawfully. U. S. ex rel. Danikas v. Day, does not intimate anything of that sort; the most it can be thought to hold is that a conditional landing, that is, a landing to reship, becomes unlawful after condition broken. But a nonquota immigrant is not admitted conditionally, and "lands" lawfully though not in fact "entitled to enter." Thus on no theory can he invoke section 34 of the Act of 1917 and in deportation proceedings he was properly heard before an inspector.

■■ On the merits the order was right. If only allowed to land to reship, he was under section 3(5) of the Act of 1924, which falls within section 14. If originally admitted as a non-quota immigrant, he would indeed be entitled to a consideration of the merits of his contention now, if the authorities sought to deport him on the ground that he had never been "entitled to enter" (section 14). That question they have not considered, and we should have to send the case back for further hearing. However, he has not shown that he was originally admitted as a nonquota immigrant, and there is nothing to indicate that he was, except his testimony that he told the inspector at Norfolk that the United States was his "home." In contradiction of this, he appears to have paid no head tax, which was due, if he was admitted as a

non-quota immigrant (section 2, Act of 1917 [8 USCA § 132]). He would have fallen within the proviso of paragraph 3, subdivision E, Rule 6, and must have "satisfied" the inspector of his status and paid the tax, though he did not need a visa. The burden was his in the deportation proceeding to show among other things the "manner" of his entry (section 23 of the Act of 1924 [8 USCA § 221]), which seems to us to include whether or not he was admitted as a non-quota immigrant. Since he has not so shown, there remains the possibility, in this case the probability, that he was only allowed to land as a seaman to reship. Having overstayed his leave, and falling within the second clause of section 14 of the Act of 1924, he could be deported for that reason.

Order affirmed.

## On Petition for Rehearing.

PER CURIAM.

■ The argument is that a seaman may lawfully "land" only as an "immigrant" or to reship on a foreign vessel, and that, since this seaman deserted, he could not have been admitted so to reship, because that implies that he was paid off and discharged. The answer is that these two are not the only possible "landings" under the act of 1924. Section 3(5) of the Immigration Act of 1924 (8 USCA § 203) says nothing about the seaman's admission to reship on a foreign vessel, but only that he must seek "to enter * * * solely in the pursuit of his calling." Section 15 (8 USCA § 215) limits his stay as may be prescribed by regulations, and section 19 (8 USCA § 166) repeats this condition. Paragraph 4 of subdivision E of Rule 6 requires a seaman under section 3(5) to show, among other things, "(4) that he seeks to enter solely on business of such vessel, or that he seeks to enter solely in pursuit of his calling as a seaman." If mere shore leave is not covered by this, at least permission to land is not limited to seamen who are paid off and discharged, though they too are included.

Thus a seaman may "land" lawfully who is not paid off or discharged and is not seeking to reship. He may desert later. The act of 1924 alone is "applicable" to such a seaman, even if his subsequent desertion is an "unlawful landing" within section 34 of the Immigration Act of 1917 (8 USCA § 166). Section 33 of that act (8 USCA § 168) applies only to cases where the master or owner pays off and discharges a seaman. This is unlawful unless he then gets leave to land in

order to reship. It does not circumscribe permission to land for other purposes; it has nothing to do with what, so far as the record shows, may have been the facts in this case.

Petition denied; mandate stayed till the appellant applies for certiorari.